UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No. 3:19-cr-140 (VLB) |
| v. | : | |
| | : | |
| MICHAEL CALLAN | : | April 24, 2020 |
| Defendant. | : | |
| | : | |

**RULING ON DEFENDANT'S RENEWED MOTION**
**TO MODIFY HIS PRISON SENTENCE [Dkt. 43]**

On April 6, 2020, defendant Michael Callan filed the instant motion to modify his sentence from imprisonment to home confinement under 18 U.S.C. § 3582(c)(1)(A) based on "extraordinary and compelling reason," specifically, the threat of COVID-19 spreading within the Bureau of Prisons exacerbated by Callan's age and pre-existing medical conditions. [Dkt. 43]. The Government opposes his motion, arguing that his claim for relief is a request to be resentenced, for which the Court has no authority and which is premature because Mr. Callan has not yet reported to the Bureau of Prisons to serve his sentence, so he is not in danger of contracting COVID-19 while in Bureau of Prisons custody. [Dkt. 47]. The Government suggests that the more reasonable alternative is continuing Mr. Callan's report date an additional sixty days or until the COVID-19 crisis becomes manageable within the Bureau of Prisons. *Id.* at 4. Mr. Callan replies. [Dkt. 48]. After considering the briefing, the Court denies Mr. Callan's motion to modify his sentence, and instead continues Mr. Callan's report date to September 14, 2020.

I. <u>Background</u>

A. <u>Mr. Callan's Health</u>

Mr. Callan is 71 years old. In early 2016, Mr. Callan had a heart attack, which resulted in damage to the heart muscle and placement of a stent. He continues to have hypertension. On March 11, 2020, he experienced severe angina and heart catheterization revealed a dissection in the area of the stent. A new stent was placed, and he was prescribed prescription blood thinner and other medications including a statin. He was also directed to participate in cardiac rehabilitation. Mr. Callan also experiences obstructive sleep apnea, for which he must use a continuous positive airway pressure (CPAP) machine at night. While Mr. Callan's heart condition is not yet stable, his cardiologist is hopeful that they will be able to "stabilize his cardiac status" if he completes his cardiac rehabilitation regimen and maintains compliance with his doctor's orders. [Dkt. 45 (Medical Records)].

B. <u>Case Background</u>

In November of 2019, this Court sentenced Mr. Callan to 6 months of imprisonment, 1 year of supervised release, and restitution of $153,636 for one count of making and subscribing a false tax return. [Dkt. 33 (Judgment)]. The offense conduct to which Mr. Callan pleaded guilty encompassed understating his gross income by over $65,000 for each of the tax years of 2010, 2011, and 2012, and failing to file returns for the tax years of 2013, 2014, and 2015, years in which he earned $116,392.00, $81,251.00, and $78,863.00 respectively. [Dkt. 24 (Pre-Sentence Investigation Report) ¶¶11-13]. The defendant's total offense level under the federal sentencing guidelines was 13, he was in criminal history category I, resulting in a guideline range of 12 – 18 months. *Id.* at ¶¶ 28, 31, 57. The government

sought a sentence within that range. [Dkt. 28 (Gov't Sentencing Mem.)]. Mr. Callan sought a sentence at the low end of the range, as well as home detention rather than incarceration. [Dkt. 29 (Defendant's Sentencing Mem.)].

The Court sentenced Mr. Callan to 6 months imprisonment, a 50 percent reduction from the bottom of the guidelines range. [Dkt. 33]. In doing so, the Court took into account Mr. Callan's age, his good works and community ties, his family ties and responsibilities, his non-violent offender status, his acknowledgment and understanding of his criminal offense, and his commitment to rectifying his crimes and preventing re-occurrence.

Mr. Callan's report date was originally set for February 26, 2020. *Id.* On February 21, the Court continued his report date for two weeks, without objection from the government, to allow Mr. Callan to finish the process of applying for a loan to be used towards restitution and to provide help for his wife, who was recovering from surgery. [Dkts. 35 (Mot. to Continue), 36 (Order)]. On March 11, the Court continued Mr. Callan's report date for an additional two weeks, without objection from the government, to allow Mr. Callan to receive medical care after he experienced a medical emergency the day before his report date. [Dkts. 38 (Second Mot. to Continue), 39 (Order)]. On March 23, the Court continued Mr. Callan's report date to April 27, without objection from the Government, as the Bureau of Prisons requested that Mr. Callan postpone his surrender for at least 30 days. [Dkts. 40 (Third Mot. to Continue), 41 (Supplement), 42 (Order)]. Mr. Callan has been designated to FCI Devens, in Massachusetts. [Dkt. 48 at 2].

II.   <u>Law</u>

**Under the First Step Act, federal prisoners may now petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction.** *See* **First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."** *Id.* **The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."** *Id.*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> **(A) Medical Condition of the Defendant.—**
>> **(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.**
>
> **[or]**
>
>> **(ii) The defendant is—**
>>> **(I)   suffering from a serious physical or medical condition,**
>>> **(II)  suffering from a serious functional or cognitive impairment, or**
>>> **(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.**

**U.S.S.G. 1B1.13, Commentary Application Note 1(A). Any "other" "extraordinary and compelling reason" may also justify relief.** *Id.* **at Commentary Application Note 1(D).**

## III. Discussion

Mr. Callan's motion does not meet the requirements for modifying a sentence for "extraordinary and compelling reasons." Mr. Callan's "heart condition is not nearly as grave as the medical conditions that have been found to justify compassionate release in other cases," and is not sufficient, standing alone, to justify compassionate release. *United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *5 (D. Conn. Feb. 7, 2020) (collecting cases emphasizing that compassionate release is appropriate for terminal illnesses and for individuals who could not care for themselves). While Mr. Callan's heart condition is not yet stable, unlike the defendant's heart condition in *Rivernider*, 2020 WL 597393, his cardiologist is hopeful that they will be able to "stabilize his cardiac status" if Mr.

Callan completes his cardiac rehabilitation regimen and maintains compliance with his doctor's orders. [Dkt. 45]. The Court concludes that Mr. Callan has not demonstrated that his heart condition alone "substantially diminishes his ability to provide self-care" at FMC Devens for the foreseeable future, especially in light of the extension of his report date to September 14, 2020.   U.S.S.G. § 1B1.13, A.N. 1(A)(ii).

Mr. Callan argues that the COVID-19 – particularly, the unique challenge that COVID-19 poses in prisons – should change the Court's analysis. The Court recognizes that, in light of his age and medical conditions, Mr. Callan is particularly susceptible to COVID-19. People at Risk for Serious Illness from COVID-19, CDC (Apr. 2, 2020).[1] The Court also recognizes that, at this point in time, correctional and detention facilities "present unique challenges for control of COVID-19 among incarcerated/detained persons, staff, and visitors." *Guidance for Correctional and Detention Facilities,* Centers for Disease Control and Prevention: Coronavirus Disease 2019 (COVID-19) (March 23, 2020).[2] In these settings, recommended social distancing and hygiene precautions are more difficult to practice. *Id.*

Mr. Callan has not yet reported to the Bureau of Prisons, however, so the potential risk of COVID-19 at FMC Devens is not urgent or even actual for him. Further, as Mr. Callan has pointed out, the duration of the pandemic is uncertain and "not easy to predict." . [Dkt. 48 at 3].   At this time, then, the Court declines to

---

[1] **Available at**: **https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html**
[2] **Available at: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.**


find that Mr. Callan will not be able to safely report to the Bureau of Prisons in the reasonably foreseeable future. Therefore, the Court finds that the interaction of the pandemic and Mr. Callan's health conditions does not provide an "extraordinary and compelling reason" for reduction of his sentence at this time. Instead, the Court finds that the more reasonable course is to continue Mr. Callan's report date to September 14, 2020.

In response, Mr. Callan argues that he is "also entitled to begin and complete his sentence within a reasonable amount of time." [Dkt. 48 at 3]. Mr. Callan has not provided any legal support for this argument, however, and so the Court does not give it weight.

Because the Court decides this motion on the basis of the non-existence of "extraordinary and compelling reasons," it does not address the exhaustion requirement.

### III.  Conclusion and Order

Mr. Callan's surrender date is extended from April 27, 2020 to September 14, 2020. Mr. Callan's motion to modify his prison sentence to home confinement is otherwise denied.  SO ORDERED.

_____/s/_____

Honorable Vanessa L. Bryant

**District of Connecticut**

Dated at Hartford, Connecticut: April 24, 2020